UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARMEN P. PORTAL o/b/o R.G.R.,

                      Plaintiff,

                v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

<u>DECISION AND ORDER</u>

19-CV-0571L

Plaintiff, on behalf of her minor daughter, R.G.R. ("claimant"), appeals from a denial of supplemental security income benefits by the Commissioner of Social Security ("the Commissioner"), based on the Commissioner's finding that R.G.R. was not disabled.

Plaintiff protectively filed an application for Supplemental Security Income on September 3, 2015, on R.G.R.'s behalf, claiming disability as of April 1, 2014. That claim was initially denied on December 2, 2015. Plaintiff requested a hearing, which was held on April 19, 2018 before Administrative Law Judge ("ALJ") Bryce Baird. (Dkt. #6 at 17). On July 26, 2018, the ALJ issued a decision concluding that R.G.R. was not disabled. (Dkt. #6 at 17-33). That decision became the final decision of the Commissioner when the Appeals Council denied review on March 4, 2019. (Dkt. #6 at 1-3). Plaintiff now appeals.

Plaintiff has moved (Dkt. #7) and the Commissioner has cross moved (Dkt. #8) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons that follow, I find that the Commissioner's decision is not supported by substantial evidence and is the product of legal error, necessitating remand.

# DISCUSSION

## I.  Relevant Standards

Because R.G.R. is a child, a particularized, three-step sequential analysis is used to determine whether she is disabled. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *See* 20 CFR §416.924. If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §416.924) – that is, if the child's impairments are functionally equivalent in severity to those contained in a listed impairment – the claimant is disabled. If not, she is not disabled. In making this assessment, the ALJ must measure the child's limitations in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Medically determinable impairments will be found to equal a listed impairment where they result in "marked" limitations in *two or more* domains of functioning, or an "extreme" limitation in one or more. 20 CFR §§416.926a(a), (d) (emphasis added).

The Commissioner's decision that R.G.R. is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

## II.     The ALJ's Decision

The ALJ initially found that since the September 3, 2015 application date, R.G.R. (6 years old at the time of the application) has had the severe impairment of attention deficit hyperactivity disorder ("ADHD"). (Dkt. #6 at 20). The ALJ proceeded to analyze whether R.G.R. has any "marked" or "extreme" limitations in any of the six domains of functioning. Based on the medical, educational and testimonial evidence presented, the ALJ concluded that during the relevant period, R.G.R. had a marked limitation in acquiring and using information, a less than marked limitation in attending and completing tasks, no limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in caring for herself, and no limitation in health and physical well-being. The ALJ accordingly concluded that R.G.R. is "not disabled." (Dkt. #6 at 26-32).

## III.    Interacting and Relating With Others

Plaintiff argues that the ALJ failed to properly evaluate R.G.R.'s limitations in the domain of interacting and relating with others, wherein the ALJ found "no" limitation. (Dkt. #6 at 28-29). In so finding, the ALJ gave "great" weight to the opinions of R.G.R.'s special education and classroom teachers and testimony from R.G.R.'s mother that R.G.R. had no limitation in interacting and relating with others, and "little" weight to the opinions of treating social worker Kenisha Vales Lopez (Dkt. #6 at 462-65), consulting psychiatrist Dr. Gina Zali (Dkt. #6 at 275-79), and reviewing state agency physician J. Meyer, (Dkt. #6 at 74-81), each of whom opined that R.G.R. had a "marked" limitation in that domain. The ALJ reasoned that while R.G.R.'s mother and her classroom teachers were entitled to special deference due to the significant amount of time they spent with R.G.R. (several hours per day, 5-7 days per week), Ms. Lopez's opinion was a cursory checkbox form with no narrative explanations or supportive clinical notes, the opinion of

Dr. Zali was based on a brief one-time examination, and Dr. Meyer's opinion was rendered by a physician who merely reviewed the record and never met, observed or examined R.G.R. (Dkt. #6 at 23-30).

As plaintiff concedes, R.G.R. is generally noted to get along well with adults and peers, and the "marked" limitations in interacting and relating indicated by Dr. Zali and echoed by Dr. Meyer were "largely based not on R.G.R's social behavior – but on her 'shutting down' issues that caused her to withdraw at home, in class and in treatment" when she felt overwhelmed, frustrated or bored. (Dkt. #7-1 at 11).

Specifically, Dr. Zali mentioned that at the time her October 29, 2015 evaluation of R.G.R., R.G.R. had been exhibiting "shutting down" behaviors at school and at home, where she stopped talking or responding when asked to do something she didn't want to do. (Dkt. #6 at 23, 277). In fact, Dr. Zali's own attempt to assess R.G.R.'s limitations was rendered nearly impossible by such behavior. (Dkt. #6 at 277: noting that R.G.R.'s receptive language skills could not be evaluated "due to child not answering most of the questions during the examination," and that R.G.R.'s attention and concentration, memory, cognitive functioning, insight, and judgment could not be assessed due to her refusal to cooperate or to do what was asked). Likewise, R.G.R.'s classroom and special education teachers indicated in their 2015 and 2018 questionnaires that R.G.R. "will sometimes shut down completely, not trying or responding to anyone," and that "[w]e never know what is going to shut her down, and she can't tell us why [she does it]." (Dkt. #6 at 25, 178-85, 226).

While the ALJ mentioned and credited the accounts of R.G.R.'s "shutting down" behaviors in his decision, he does not appear to have considered the effect of those behaviors in assessing R.G.R.'s limitations in the domain of interacting and relating with others, focusing instead on

4

whether R.G.R. could interact in a socially appropriate manner with children and adults, and maintain healthy relationships.

While the ALJ's finding that R.G.R. often "interacts well with peers and adults" is well-supported by the record, it is understood that "nice kids can be disabled, too," *Dunaway ex rel. E.B. v. Colvin*, 2015 U.S. Dist. LEXIS 13390 at *43 (W.D.N.Y. 2015) (quoting *Heath ex rel. D.H. v. Astrue*, 2009 U.S. Dist. LEXIS 104685 at *31 (E.D.Wis. 2009), and that the "domain of interacting and relating with others concerns more than . . . disruptive behavior." *McClain v. Barnhart*, 299 F. Supp. 2d 309, 326 (S.D.N.Y. 2004). As the ALJ acknowledged, "communication is essential to both interacting and relating," and communication includes a child's capacity to participate in conversations with teachers and caregivers. (Dkt. #6 at 28-29). "Shutting down" behaviors in which a child becomes non-communicative are manifestly relevant to that child's overall ability to engage with others.

Because the ALJ did not consider the extent to which R.G.R.'s "shutting down" prevented effective communication with her teachers and peers, or otherwise reconcile this evidence with his finding that plaintiff has no limitation in the domain of interacting and relating with others, his conclusion as to that domain was not supported by substantial evidence. The record does not contain persuasive proof that R.G.R.'s limitation in that domain is, indeed, marked, which would necessitate a finding of disability: as such, remand is appropriate. *See generally Dunaway*, 2015 U.S. Dist. LEXIS 13390 (remanding for further proceedings where, inter alia, ALJ failed to discuss the effect of the minor claimant's "shutting down" when she becomes overwhelmed in the classroom, in assessing the domain of interacting and relating with others).

On remand, the ALJ is directed to assess the impact of R.G.R.'s "shutting down" on her ability to relate and interact with others. In so doing, the ALJ is instructed to recontact R.G.R.'s

educational/psychological care providers, or to order supplemental consultative examinations, if and as he deems appropriate.

## IV. Completeness of the Record

Plaintiff also argues that the record was not sufficiently developed with respect to R.G.R.'s school records.

The record, which includes all of the educational documentation that was produced by R.G.R.'s school in response to requests by the ALJ and by plaintiff's counsel, contains: (1) R.G.R.'s 2014-2015 and 2015-2016 IEP (Dkt. #6 at 260-67, summarizing R.G.R.'s standardized test results, teacher comments, speech skills, social and physical development, goals, and services to be provided); (2) a March 13, 2015 psycho-educational evaluation by a school psychologist, with the bottom of every page cut off and portions of illegible text, presumably attributable to photocopying errors (Dkt. #6 at 268-71); and (3) R.G.R.'s 2017-2018 and 2018-2019 IEP (Dkt. #6 at 467-75). Plaintiff argues that due to the illegibility and incompleteness of the March 2015 psychological evaluation, as well as the absence of an April 2017 psychological evaluation and April 2017 auditory testing results (referred to in R.G.R.'s April 2018 IEP but not included in the record), the record was not sufficiently complete.

The Court is not convinced that the absence of the April 2017 auditory testing records created a gap in the record, particularly given that the 2018 IEP summarized its findings in detail. However, given the potential relevance of the March 2015 psychological evaluation (and the "missing" April 2017 psychological evaluation) to the ALJ's reevaluation of the domain of interacting and relating to others (as directed above), the ALJ is directed on remand to request and/or subpoena legible and complete copies of all psycho-educational evaluations of R.G.R. by

her school during the relevant time period, in addition to such other and further records the ALJ may deem relevant and appropriate.

## CONCLUSION

For the foregoing reasons, I find that the ALJ's decision is not supported by substantial evidence, and was the product of legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #7) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #8) is denied, and the matter is remanded for further proceedings. On remand, the ALJ is directed to reassess R.G.R.'s limitations (or lack thereof) in the domain of interacting and relating with others, and to obtain additional relevant psycho-educational records, as set forth above.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
July 22, 2020.